# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**HENRY KUEHN and JUNE P. KUEHN**  PLAINTIFFS

V.  CIVIL ACTION NO.1:08CV577 LTS-RHW

**STATE FARM FIRE AND CASUALTY COMPANY,**
**ET AL.**  DEFENDANTS

## MEMORANDUM OPINION

The Court has before it the merits of a Declaratory Judgment action to determine the validity of an appraisal award. The plaintiffs contend the appraisal is valid and enforceable. State Farm Fire and Casualty Company (State Farm) contends the appraisal is invalid and should be set aside.

On July 22 and 23, I conducted an evidentiary hearing to reach the merits of the parties' contentions. Based on the evidence introduced at this hearing, and based upon the other evidence submitted by the parties, I have determined the appraisal performed in this case complied with the terms of the State Farm homeowners policy and with applicable Mississippi law. There is no evidence the appraisal is the product of fraud or the appraisal is flawed by any substantial error. The appraisal is therefore valid, binding, and enforceable in accordance with the terms of the policy.

### Undisputed Facts

The storm forces generated by Hurricane Katrina extensively damaged plaintiffs' residence at 1305 Cove Place, Ocean Springs, Mississippi. State Farm insured this property against sudden and accidental loss, subject to specified exclusions, under its homeowners policy 24-BN-1533-4. The policy provides the following limits of coverage:

| | |
|---|---|
| Dwelling | $196,900 |
| Dwelling Extension | 51,700 |
| Personal Property | 147,675 |
| Loss of Use | Actual Loss Sustained |

The policy also provided optional coverage for "Increased Dwelling up to $39,380 - OPT ID" and "Ordinance/ Law 10%/ $19,690 - OPT OL."

During the storm, the insured property sustained both wind damage and damage from storm surge flooding. The flood waters reached a depth of approximately two feet above the floor of the building's second story. Storm winds damaged the roof, allowing

rain water to enter the second floor and damage the second floor ceiling and walls. The policy covers both the wind damage and rain water damage but excludes damage caused by storm surge flooding.

The plaintiffs were unable to reach an agreement with State Farm concerning the amount of the damage covered under their policy. On January 4, 2006, State Farm tendered a payment of $10,765.48 "for the wind damage to the roof of your home and attached building and for water damage caused by wind driven rain on the walls and ceilings of the two buildings." Plaintiffs were not satisfied with State Farm's assessment of their covered losses, and, on April 1, 2006, the plaintiffs demanded State Farm engage in the appraisal process outlined in the State Farm policy:

> **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable amount of time they shall submit their differences to the umpire. Written agreement signed by any two of these three people for any item shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

The "amount of loss" in this provision refers to the amount of the covered loss. (State Farm response to plaintiffs' requests for admissions number 10 in Exhibit P-24 and number 8 in Exhibit P-25)

State Farm refused to name an appraiser within the twenty days allowed by the appraisal provision, and, on June 21, 2006, the plaintiffs filed an action in the Chancery Court of Jackson County, Mississippi, asking that court to order State Farm to go forward with the appraisal process. State Farm removed the state court action to this Court on July 28, 2006. On January 19, 2007, I remanded the case to the state court. On April 24, 2007, the state court ordered an appraisal be done in accordance with the terms of the homeowners policy. The policy's appraisal provision is set out verbatim in the state court's order. The state court retained jurisdiction "to resolve any disputes between the parties arising in the course of the appraisal." (Order of the Chancery Court of Jackson County, Mississippi - Exhibit P-2)

Plaintiffs appointed their appraiser, Mr. Lewis O'Leary (O'Leary), on May 29, 2007, and State Farm appointed its appraiser, Mr. John Minor (Minor), on June 14, 2007. O'Leary and Minor agreed Mr. John Voelpel (Voelpel) would act as umpire. There is no evidence either of the parties' appraisers had a financial interest in the outcome of the appraisal, and there is no evidence Voelpel does not qualify as a competent, impartial umpire.

The appraisal panel met at the plaintiffs' property and conducted a joint inspection. Thereafter, the appraisers discussed the damage they had observed and ultimately reached a consensus that the plaintiffs' covered losses, calculated on an actual cash value (ACV) basis, rather than a replacement cost basis (RCV), totaled $174,881.80. The appraisal award (Exhibit P-3a) listed the covered losses as:

> *Dwelling      RCV $109,868.06         ACV  $82,404.38*
> *Law & Ordinance                                $42,468.67*
> *Personal Property                              $36,918.75*
> *Additional Living Expenses                     $13,020 at ACV*
> *Subject to policy limits*

All three members of the panel appeared at the hearing and testified about the steps they took during this appraisal. The testimony of the three members of the panel was entirely consistent. According to the undisputed evidence, the covered loss in this case was calculated using two methods. The loss was calculated on a per square foot basis and also on an item-by-item basis using a computer program called Exactimate. The two calculations reached results that were within five per cent of each other.

State Farm contends its appraiser, Minor, exceeded his authority during this appraisal. State Farm asserts its representatives instructed Minor to appraise all of the damage to the insured property and not just the wind damage covered under the plaintiffs' policy.

Minor is an experienced appraiser who had been trained by Jack Land (Land), an attorney who resides in Hattiesburg, Mississippi. State Farm had hired Minor on several prior occasions to appraise wind damage from Hurricane Katrina. Before the appraisal began, Minor made a trip to the plaintiffs' property and, with the plaintiffs' consent, did a preliminary on-site inspection. After this preliminary inspection, Minor reported his findings to State Farm.

Minor testified he was ordinarily hired directly by State Farm to perform appraisals. The appraisal of the plaintiffs' property was different in that he (Minor) was retained by State Farm's attorneys, a unique situation in Minor's experience. Minor's only written instructions are set out in his engagement letter (Exhibit P-8) signed by Lawrence J. Tucker, Jr. (Tucker), one of the attorneys representing State Farm in this action:

-3-

> *Dear Mr. Minor:*
>
> *This will confirm that we have retained your services to appraise the above referenced property. You will find enclosed a check in the amount of $2,000.00, along with a disk containing the following documents:*
>
> > *1.  Color Photographs*
> > *2.  Aerial Maps/Photographs*
> > *3.  Elevation Certificate*
> > *4.  Homeowners Claim File; Certified Policy and Underwriting*
> > *6.[sic] Flood Claim File; Certified Policy and Underwriting*
> > *7.  Chancery Court Appraisal Order*
> > *8.  Estimate*
>
> *Should you need anything further, please let me know.*

Minor testified that before he participated in this appraisal he had a telephone conversation with Tucker. At the time of this conversation, Minor had the order of the Jackson County Chancery Court in hand. It was Minor's understanding he was to appraise only the covered wind damage, not the storm surge flooding damage. This was consistent with his prior training and with the procedure he had followed on prior assignments given to him by State Farm. This was also what Minor understood the state court's order to require. But it was Minor's impression Tucker wanted him to depart from his previous practices and follow a different procedure in this appraisal.

Minor testified he found Tucker's instructions confusing and inconsistent with his (Minor's) understanding of his responsibilities as an appraiser. Minor's confusion and uncertainty concerning Tucker's instructions were sufficient to prompt him to ask that Tucker either provide his instructions in writing or furnish a modified court order reflecting those instructions. Tucker declined Minor's request for either of these forms of clarification. Although Tucker attended the evidentiary hearing, he did not take the witness stand to clarify or contradict what Minor had to say about their conversation.

Minor's dissatisfaction was such that he asked Tucker to hire another appraiser and relieve him (Minor) of his responsibilities in this case. Tucker refused this request. Minor turned to Land and to other State Farm representatives for assistance in understanding his instructions, and Minor ultimately came away with the understanding he was to follow his ordinary practices in performing this appraisal. Minor testified that is exactly what he did.

After meeting together to discuss the damage they observed during the joint inspection of the plaintiffs' residence, the members of the panel, at Minor's instance, agreed all damage below the water line on the second floor would be excluded from consideration in the appraisal. The plaintiffs contended some of the damage below the

water line was attributable to covered wind and rain damage rather than exclusively to flooding, but plaintiffs' representative, O'Leary, nevertheless agreed to exclude this damage from consideration. After discussing the damages they observed above the second-story water line, Minor, O'Leary, and Voelpel unanimously agreed the total covered loss was $174,881.80. The three members of the panel all signed a report reflecting this conclusion. (Exhibit P-3a)

When the report reached State Farm, it was not clear to State Farm's representatives what damage the appraisers had assessed, i.e. it was not clear to State Farm whether the $174,881.80 loss consisted of wind damage alone or a combination of wind damage and damage from storm surge flooding. To clarify their findings, the members of the appraisal panel amended their report to indicate they had appraised wind damage alone. The amended report (Exhibit P-3b) was duly furnished to State Farm.

The State Farm policy provides:

*Loss Payment. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:*

*a.  reach agreement with you;*
*b.  there is an entry of a final judgment; or*
*c.  there is a filing of an appraisal award with us.*

Sixty days elapsed after the filing of the amended appraisal award, and plaintiffs, through counsel, demanded payment of the appraised sum. State Farm refused to pay the appraisal award. This action ensued.

## Plaintiffs' Contention and Supporting Testimony

Plaintiffs' contend the appraisal was carried out in accordance with the terms of the policy and the appraisal is valid and binding. In support of their position, the plaintiffs called all three members of the appraisal panel to the witness stand at the evidentiary hearing. All three members of the appraisal panel confirmed the accuracy of the written award and testified the appraisal took into consideration wind damage only. Plaintiffs do not contend the exclusion of all damages below the water line was an error on the part of the appraisal panel, and plaintiffs do not otherwise contest the accuracy or the validity of the panel's findings.

## State Farm's Contention and Supporting Testimony

At the hearing, State Farm's attorneys identified three reasons State Farm is dissatisfied with the appraisal and believes it to be invalid: 1) the appraisal did not contain an itemization of the appraised damage; 2) the appraisal was considerably higher than the damage identified by State Farm's adjustor and by State Farm's appraiser (Minor) before the appraisal was undertaken, suggesting to State Farm the appraisal was not properly conducted; and 3) the scope of the appraisal was inconsistent with Mississippi law.

## Itemization

With respect to State Farm's first objection, the lack of itemization, I heard no evidence indicating State Farm ever asked the members of the panel to make a more detailed itemization of the damages they had appraised. Nor did State Farm apply to the state court for an order requiring such an itemization.

In *Mitchell v. Aetna Cas. & Sur. Co.,* 579 F.2d 342, 351 (Miss.1978), the Court considered the requirements of a somewhat similar appraisal provision. The provision before the Court in that case stated:

> *The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.*

This provision was held to require only that the award specify what covered property appearing on the face of the declarations page was appraised and not that each constituent element of the insured property be evaluated separately.

The appraisal provision of the plaintiffs' policy does not require the appraisers to itemize the losses covered by the appraisal. In my view, the lack of a detailed itemization does not affect the validity of the appraisal award in this case. State Farm presented no evidence it has been prejudiced in any way by the appraisers' failure to make a more detailed itemization or that this has resulted in injustice. *Id.*

### *Discovery of Additional Damages During the Appraisal*

With respect to State Farm's second objection, I heard testimony from Minor, on cross-examination by State Farm, that, during the joint inspection of the insured property, the appraisers discovered the structural components of the roof of the plaintiff's home had been damaged by the storm winds and rain. Minor had not identified this structural roof damage in his preliminary report. The appraisal panel

concluded the roof needed extensive repairs, including the replacement of the roof trusses and other structural roofing components. Minor testified he discovered this structural roof damage during the panel's joint inspection when he walked on the roof and felt it give way beneath his feet. This indicated to Minor the basic integrity of the roof structure had been compromised by the storm winds and the incursion of rain water. State Farm presented no evidence this finding by Minor and the other panel members is incorrect. Nor did State Farm introduce any evidence that any of the other unanimous findings of the appraisers were erroneous.

The discovery of previously undetected damage during the appraisal inspection is not surprising. An inspection carried out jointly by the parties representatives, i.e. by qualified appraisers, is likely to be more thorough than an inspection carried out by either party's representative acting alone. In all events, the discovery of previously undetected damage is entirely consistent with the purpose of an appraisal, i.e. to make a fair determination of the scope and amount of a loss covered under the terms of a property insurance contract.

### The Scope of the Appraisal

In addition to the lack of itemization and the finding of previously undiscovered roof damage, State Farm contends the appraisal is invalid because the scope of the appraisal is inconsistent with Mississippi law as expressed in *Munn v. National Fire Ins. Co. of Hartford,* 115 So.2d 54 (Miss.1959) *(Munn)*. State Farm asserts that because the appraisal differed from the assessment procedure authorized in *Munn*, the appraisal is invalid as a matter of law and must be set aside.

In support of this contention, State Farm asserts its appraiser, Minor, was not authorized to appraise the wind damage to the insured dwelling, but that he (Minor) had been instructed to appraise both the wind damage and the damage from storm surge flooding. State Farm asserts that because the appraisal panel undertook to appraise wind damage only, the panel made a determination of causation and thereby ran afoul of the holding in *Munn*.

*Munn* is among the leading cases that establish Mississippi law concerning appraisals done pursuant to property insurance contracts. *Munn* stands for the proposition that the refusal of an appraisal panel to include a disputed item of property (in that case a wall was seen to be leaning) in its appraisal was sufficient to require the appraisal be done again and the disputed item be included. Following *Munn*, where there is a dispute concerning the items of property that were damaged by a covered peril and should, therefore, be part of the appraisal, that coverage dispute– i.e. the question whether the damage to the disputed item is a covered loss–is outside the authority of the appraisal panel to decide and is subject to litigation.

In my view, the holding of *Munn* has no application to the facts of this case. In this case there is no coverage dispute that would bring the validity of the appraisal into question under the holding of *Munn*. Here, the panel was unanimous in its decision to appraise only the wind damage to the plaintiffs' property, and the panel was also unanimous in its identification of that damage. At the instance of State Farm's representative on the panel, the panel members unanimously agreed all damage below the second-story water line was not part of the covered loss and was to be excluded from consideration. While this agreement excluded some of the damages the plaintiffs were claiming, there is no *Munn* issue of causation because the plaintiffs have accepted this exclusion. State Farm, and not the plaintiffs, received the benefit of this exclusion, and only the plaintiffs would have standing to challenge the validity of the appraisal on this ground. Certainly State Farm has no standing to assert the plaintiffs' rights concerning the exclusion of this portion of the plaintiffs' original claim.

To put this another way, State Farm is asserting this appraisal is invalid and unenforceable because the appraisal panel unanimously decided to exclude from consideration all damage below the second story water line. The appraisers testified they excluded this damage from consideration because damage caused by storm surge flooding is not a covered loss under the terms of the State Farm policy. This exclusion gives State Farm, and not the plaintiffs, the benefit of the doubt on this point. Once the parties' representatives agreed damage below the second-story water line was not part of the covered loss, coverage was no longer an issue in dispute.

While *Munn* holds appraisers may not exclude a disputed item of damage from consideration, requiring all such damages be taken into consideration by the appraisers and the disputed issue of causation be left to the court, *Munn* does not prohibit an appraisal in which both parties' appraisers agree on the items the appraisal should take into consideration and on the items that should be excluded from consideration. *Munn* does not require the appraisal take into consideration any damage that both parties' representatives agree should be excluded (in this case the damage from storm surge flooding, i.e. all damage below the water line on the second floor).

**Applicable Law**

Appraisal clauses embedded in property insurance contracts are enforceable under applicable Mississippi law. *Home Ins. Co. v. Watts,* 91 So.2d 722 (Miss.1957) *modified on other grounds, Home Ins. Co. v. Watts,* 93 So.2d 848 (Miss.1957)*; Havard v. Kemper Nat. Ins. Companies,* 71 F.3d 876 (5th Cir.1995)*; City of Laurel, Mississippi v. ARGO GROUP US,* 2009 WL 112220 (S.D.Miss.2009)*.*

Appraisal is a form of alternative dispute resolution that is similar in some respects to arbitration, but the two procedures are not identical or synonymous. *Hartford Fire Insurance Company v. Jones,* 108 So.2d 571 (Miss.1959)*.* Appraisers make their decision based on personal inspection of the damaged property, and

appraisers are not required to hear evidence from other sources or conduct their work in a quasi-judicial manner. *Franklin Fire Ins. Co. v. Brewer,* 159 So.2d 545 (Miss.1935).

Both parties to an insurance contract containing an appraisal provision have a duty to act in good faith and to make a reasonable effort to comply with this provision of the contract. *Hartford Fire Ins. Co. v. Conner,* 79 So.2d 236, 239 (Miss.1955).

An appraisal provision embedded in a property insurance contract is valid and enforceable in accordance with its terms. "In Mississippi, as in other states, it is difficult for a [party] to succeed in impeaching an award made by disinterested appraisers. Mississippi law favors amicable settlements of controversies without court involvement." *Mitchell v. Aetna Cas. & Sur. Co.,* 579 F.2d 342, 350 (5th Cir.1978) (citations omitted).

Appraisers are not authorized to decide disputed issues of causation. *Munn.* Where there are no disputed issues of causation, appraisers are required and empowered to evaluate the covered loss and to reach a final decision of the amount of that loss. *City of Laurel, Mississippi v. ARGO GROUP US, supra.*

Appraisals are presumptively valid under Mississippi law, and appraisal awards may be set aside only for a limited number of reasons. *Mitchell , supra.* Appraisals may be set aside on a showing of fraud, a substantial mistake that must be corrected to prevent injustice, or a showing the appraisers acted without authority. *Munn*. If an appraisal panel mistakenly fails to include a loss that is covered under the policy or includes a loss that is excluded by the policy, the aggrieved party is entitled to prove this has occurred, and, in such a case, the burden of proof is on the party asserting the error; there is a presumption the appraisers did their job properly, in the absence of evidence the appraisal panel made a mistake. *Mitchell, supra.*

## Conclusion

Before I conducted the evidentiary hearing in this case, I understood State Farm was challenging the validity of this appraisal on the grounds it included items of property State Farm believed to have been damaged by storm surge flooding, an excluded peril. This led me to believe State Farm might have had a legitimate complaint under *Munn*. I now find, after hearing the evidence, particularly the testimony of the three members of the appraisal panel, I was mistaken in my understanding of State Farm's contentions. State Farm offered no evidence this appraisal mistakenly includes any damage caused by storm surge flooding or any other excluded peril. It is undisputed that no contested items of damage were included in the appraisal award, and it is likewise undisputed that all damages below the second-story water line were properly excluded from consideration.

Accordingly, I will enter an order granting the plaintiffs' a declaratory judgment the appraisal at issue is valid and binding on the parties in accordance with its terms.

Judgment will be entered for $174,881.80 plus interest from sixty days after the amended appraisal was delivered to State Farm (the date Plaintiffs' claim became liquidated) until the judgment is paid. Plaintiffs' claim for attorneys fees and for other extracontractual damages will be resolved in subsequent proceedings.

**DECIDED** this 17th day of August, 2009.

                                                      s/ L. T. Senter, Jr.
                                                      L. T. SENTER, JR.
                                                      SENIOR JUDGE